IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


**MEW SPORTING GOODS, LLC.,**

        **Petitioner,**

**v.**              **//**    **CIVIL ACTION NO. 1:13CV10**
                                    **(Judge Keeley)**


**DAVID D. JOHANSEN, Director of
Industry Operating Louisville
Field Division Bureau of Alcohol,
Tobacco, Firearms & Explosives,**

        **Respondent.**


**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 16], DENYING
PETITIONER'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 11],
AND DISMISSING THE PETITION WITH PREJUDICE**

Before the Court is the motion for summary judgment (dkt. no. 11) filed by the petitioner, MEW Sporting Goods, LLC ("MEW"), and the motion to dismiss or, in the alternative, for summary judgment (dkt. no. 16) filed by the respondent, David D. Johansen ("Johansen"). For the reasons that follow, the Court **GRANTS** Johansen's motion, **DENIES** MEW's motion, and **DISMISSES** the petition **WITH PREJUDICE.**

## I. BACKGROUND

On December 5, 2012, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") sent MEW a final notice of denial regarding its application for a federal firearms license ("FFL"). See Final Notice of Denial 4, July 1, 2013, Dkt. No. 15-3. The events

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

leading up to that denial are discussed below and provide critical context.

Teresa Walsh (formerly, Teresa Snyder) ("Mrs. Walsh") operated a gun sales business, TGS Sporting Goods ("TGS"), until the revocation of her FFL on April 3, 2006.[1]  See Notice of Denial 3, July 1, 2013, Dkt. No. 15-7.  Mrs. Walsh subsequently married Mark Walsh ("Mr. Walsh"), and, in March 2008, the couple formed three businesses, including Mountaineer Country Ice Cream, LLC, Mountaineer Country Rentals, LLC, and Mountaineer Gun Sales, LLC ("Mountaineer").  See id.  Although both Mr. and Mrs. Walsh were listed as members and organizers of the ice cream and rental companies, Mr. Walsh was the sole member of the gun sales business. See id.  After forming Mountaineer, Mr. Walsh applied and was approved for an FFL, which he used to purchase and sell guns through Mountaineer for approximately two and a half years.  See Final Notice of Denial 13, July 1, 2013, Dkt. No. 15-7.

---

[1] The revocation of Mrs. Walsh's FFL was based on (i) failure to properly maintain firearms acquisition and disposition records, (ii) failure to property maintain ATF Form 4473, firearms transaction records, (iii) failure to have transferees fill out a new ATF Form 4473 after the 30-day time limitation expired, (iv) failure to file ATF Form 3310.4, report of multiple sale or other disposition of pistols or revolvers, (v) failure to maintain required business records, and (vi) failure to be present on premises during business hours.  See Final Notice 8-12, July 1, 2013, Dkt. No. 15-8.

## MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
## MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
## MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
## THE PETITION WITH PREJUDICE

In 2011, the ATF received a telephone call from a Mountaineer employee regarding certain bookkeeping improprieties. See Resp.'s Mem. in Supp. 2, July 1, 2013, Dkt. No. 17. In response, the agency conducted an on-site investigation that lasted from March 22, 2011 through April 5, 2011. See id. As a result of that investigation, the ATF issued a Notice of Revocation on June 16, 2011. See id. at 4. In accordance with 18 U.S.C. § 923(f)(2), Mr. Walsh promptly requested an administrative hearing, which the ATF scheduled for September 27, 2011. See id. However, on September 23, 2011, Mr. Walsh withdrew his request for the hearing. See id. Accordingly, the ATF canceled the hearing and issued a Final Notice of Revocation on November 3, 2011, for the following reasons:

> The inspection disclosed that Teresa Walsh (formerly Teresa Snyder) is an owner and responsible person of Mountaineer Gun, yet was intentionally not listed as such by Mountaineer Gun on its application, ATF Form 7, as is required. By intentionally failing to list Teresa Walsh as an owner and responsible person on ATF Form 7, Mountaineer Gun willfully failed to disclose material information on the application. . . . Mark Walsh, her husband, applied for the Mountaineer Gun license at her urging in 2008. At the time he was aware she had a Federal firearms license revoked.

See Final Notice at 13-15, Dkt. No. 15-7. According to the ATF, Mr. Walsh's failure to list Mrs. Walsh on Mountaineer's FFL application provided a sufficient basis to revoke the application

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

under 27 C.F.R. § 478.47(b)(4), 18 U.S.C. §§ 923(d)(1)(C), and (d)(1)(D). See id. at 14.

On December 14, 2011, Mountaineer petitioned this Court to review the ATF's revocation. See Mountaineer Gun Sales, LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives, No. 1:11CV200, 2012 WL 194079, at *1 (N.D.W. Va., Jan. 23, 2012). It also filed a motion to stay the revocation of its license or, in the alternative, for a preliminary injunction. See id. at 4. For its part, the ATF filed a motion to dismiss the petition for lack of subject-matter jurisdiction. See id. On January 23, 2012, the Court entered a memorandum opinion and order granting the ATF's motion to dismiss and denying Mountaineer's motion for a stay or preliminary injunction. See id. Although the Court based its dismissal on Mountaineer's failure to exhaust its administrative remedies, for purposes of the motion for preliminary injunction, the Court also addressed whether Mountaineer would have been likely to succeed on the merits. See id. at *4. It agreed with the ATF's findings that "Mountaineer was using Mark Walsh as a strawman applicant, and that Teresa Walsh played a significant role in the business." Id. at *6. The Court further explained that the "ATF likely did not err in concluding that Mountaineer's failure to

4

disclose Teresa Walsh as a 'responsible person' was a willful violation of § 923(d)(1)(D)." Id.

On January 31, 2012, eight days after the Court's decision, Mr. Walsh formed MEW, identifying himself as the sole member. See Pet. 1-2, Jan. 23, 2013, Dkt. No. 1. Like Mountaineer, MEW is in the business of purchasing and selling firearms and requires an FFL in order to operate. On February 13, 2012, Mr. Walsh submitted an FFL application on behalf of MEW. See App. 7, July 1, 2013, Dkt. No. 15-7. On June 8, 2012, the ATF denied the application on the basis of Mr. Walsh's alleged "prior willful violation of the Gun Control Act." See Notice of Denial 1-2, July 1, 2013, Dkt. No. 15-7; see also 18 U.S.C. § 923(e). Several days after receiving the notice of denial, Mr. Walsh requested an administrative hearing in accordance with 18 U.S.C. § 923(e)(2). See Letter 6, July 1, 2013, Dkt. No. 15-7. A hearing occurred on October 18, 2012, in Bridgeport, West Virginia, during which interviews with ATF Inspector Gary Malaskovitz ("Inspector Malaskovitz"), the lead investigator of Mountaineer, and Mr. Walsh were taken. See Hrg. Tr., July 1, 2013, Dkt. Nos. 15-4, 15-5.

On December 5, 2012, the ATF issued a Final Notice of Denial to MEW, which included five pages of findings of fact and

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

conclusions of law.  See Final Notice at 4-9, Dkt. No. 22-1.  In that Final Notice, the ATF concluded that Mr. Walsh had willfully failed to disclose material information on the Mountaineer FFL application, that MEW is a successor-in-interest to Mountaineer, and therefore Mountaineer's willful violation was attributable to MEW.  See id. at 5.  The ATF's decision also restated the evidence purporting to demonstrate that Mrs. Walsh was a responsible person at Mountaineer.  See id. at 6-7.

On behalf of MEW, on January 23, 2013, Mr. Walsh petitioned for review of the ATF's denial of MEW's FFL application. Thereafter, on June 19, 2013, MEW filed a motion for summary judgment, in which it argued that (1) there is no statutory basis for denial of an FFL application based on failure to disclose a responsible person, and (2) that, in any event, the evidence is undisputed that Mrs. Walsh was not a responsible person at Mountaineer.  See Pet.'s Mem. in Supp. 2-12, June 19, 2013, Dkt. No. 11-1.  On August 15, 2013, Johansen filed a response brief, countering that (1) collateral estoppel precludes judicial review, (2) the ATF's decisions in Mountaineer and in this case were proper, and (3) Mr. Walsh's newly formed entity, MEW, did not sever his prior liability at Mountaineer.  See Respondent's Mem. at 1-13,

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

Dkt. No. 24.  MEW filed a reply on September 3, 2013, restating its original arguments and countering those of Johansen.  See Pet.'s Reply Br. 2-3, Sept. 3, 2013, Dkt. No. 26.

On July 1, 2013, Johansen filed a motion to dismiss or, in the alternative, for summary judgment, in which he argues that (1) the ATF has the statutory authority to deny an FFL application for an applicant's past willful failure to disclose material information, (2) Casanova Guns, Inc. v. Connally, 454 F.2d 1320 (7th Cir. 1972) imputes a willful violation of the Gun Control Act ("GCA") from a corporate entity to its successor-in-interest, and (3) collateral estoppel bars relitigation concerning Mrs. Walsh's status as a responsible person.  See Resp.'s Mem. in Supp. at 9-14, Dkt. No. 17.

In its response, MEW contends (1) the ATF lacks the statutory authority to request information about responsible persons on the FFL application; (2) the undisputed facts establish that Mrs. Walsh was not a responsible person for Mountaineer; (3) Casanova Guns is distinguishable from this case; and (4) collateral estoppel cannot be applied.  See Pet.'s Resp. Br. 1-22, Aug. 15, 2013, Dkt. No. 23. In his reply brief, Johansen argued for the first time that, because the ATF's decision with respect to MEW was based on its

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

previous final decision with respect to Mountaineer, MEW is not entitled to judicial review. <u>See</u> Resp.'s Reply Br. 6-7, Sept. 3, 2013, Dkt. No. 25.

On November 21, 2013, the Court held a hearing on the parties' motions, at which counsel for Johansen withdrew his collateral estoppel argument. The Court therefore determined that the remaining issues pending for review included (1) whether the ATF has the statutory authority to request information regarding responsible persons on an FFL application, (2) the precedential effect, if any, of the decision in <u>Casanova Guns</u> on this case, (3) whether the ATF's prior decision with respect to Mountaineer precludes judicial review in this case,[2] and (4) whether the material facts in the case are undisputed. At the behest of counsel for MEW, the Court also permitted supplemental briefing by both parties on the interplay between <u>Casanova Guns</u> and the relevant statutes of the GCA. The parties completed their

---

[2] As mentioned, this issue was first raised by Johansen in his reply brief. Although "[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered," <u>Clawson v. FedEx Ground Package Sys., Inc.</u>, 451 F. Supp. 2d 731, 734 (D. Md. 2006), because the Court ordered supplemental briefing, MEW had the opportunity to, and did, address the argument. Thus, the issue is properly before the Court and will be discussed.

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

supplemental briefing on December 13, 2013, and the motions are now ripe for review.

## II. DISCUSSION

### A. The ATF's Statutory Authority and "Responsible Persons"

In its opening brief, MEW argues that the issue of whether Mrs. Walsh was a responsible person at Mountaineer is irrelevant because, in any event, the ATF acted outside the scope of its statutory authority by requiring Mountaineer to list responsible persons on its FFL application. In response, Johansen argues that the ATF is well within its statutory authority to require the disclosure of responsible persons.

Contrary to MEW's argument, the ATF's statutory authority to promulgate application requirements is clear. Congress specifically delegated to the Attorney General the decision as to what information to include on the FFL application. See 18 U.S.C. § 923(a) ("The application shall be in such form and contain only that information necessary to determine eligibility for licensing as the Attorney General shall by regulation prescribe."). The Attorney General, in turn, delegated his authority to the ATF. See 28 C.F.R. § 0.130(a)(1). Acting under such authority, the ATF determined that FFL applicants must disclose responsible persons,

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

including, "[i]n the case of a corporation, partnership, or association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of the corporation, partnership, or association, insofar as they pertain to firearms."  <u>See</u> FFL Application, Instruction 10, Dkt. No. 15-8.

In a related argument, MEW also asserts that, as a matter of statutory interpretation, Mrs. Walsh does not meet the ATF's definition of a "responsible person," and was thus properly excluded on Mountaineer's FFL application.  In support of this argument, MEW points out that the ATF's definition is taken directly from 18 U.S.C. § 923(d)(1)(B).  Indeed, the language is nearly identical.  As a prerequisite to approval of an FFL, § 923(d)(1)(B) requires that

> the applicant (<u>including, in the case of a corporation, partnership, or association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association</u>) is not prohibited from transporting, shipping, or receiving firearms or ammunition in interstate or foreign commerce under section 922(g) and (n) of this chapter.

(emphasis added).

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

Subsection (B) is one of seven subsections requiring certain conditions of "the applicant." However, subsection (B) is the only one of the seven to qualify "the applicant" with the parenthetical noted above. Under MEW's theory, "responsible person," as that term is defined by the ATF, cannot include anyone who falls under any of the other six subsections, and instead is solely a person within the purview of subsection (B). According to MEW, because Mrs. Walsh was not prohibited from transacting firearms under §§ 922(g) or (n), she was not a responsible person and therefore was properly excludable from Mountaineer's FFL application.

In considering MEW's argument, several principles of statutory interpretation are helpful. As MEW correctly notes, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." <u>United States v. Wong Kim Bo</u>, 472 F.2d 720, 722 (5th Cir. 1972). MEW applies the maxim of <u>expressium facit cessare tacitum</u> to § 923(d)(1) of the GCA to argue that Congress's inclusion of the parenthetical in subsection (B) demonstrates its intent to limit the potential liability of business applicants to that subsection.

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

Although MEW's interpretation of § 923(d)(1) is not entirely implausible, it fails to account for two other important canons of statutory construction.  Under the principle of <u>noscitur a sociis</u>, "statutory language cannot be construed in a vacuum," but rather "words of a statute must be read in their context and with a view to their place in the overall statutory scheme." <u>Davis v. Michigan Dept. of Treasury</u>, 489 U.S. 803, 809 (1989); <u>see also</u> <u>F.D.A. v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 133 (2000) (internal quotation marks and citation omitted) ("A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme."); <u>F.T.C. v. Mandel Brothers, Inc.</u>, 359 U.S. 385, 389 (1959) (stating that courts must try "to fit, if possible, all parts [of a statute] into an harmonious whole").  Further, statutes should be read <u>in pari materia</u> because "identical words used in different parts of the same act are intended to have the same meaning."  <u>Atlantic Cleaners & Dyers v. United States</u>, 286 U.S. 427, 433 (1932) (quoted by <u>Gustafson v. Alloyd Co.</u>, 513 U.S. 561, 570 (1995)); <u>see also</u> <u>Erlenbaugh v. United States</u>, 409 U.S. 239, 243 (1972) ("[A] legislative body generally uses a particular word with a consistent meaning in a given context.").

## MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING THE PETITION WITH PREJUDICE

Pursuant to these principles, "[a]n equally reasonable construction of Section 923(d)(1) is that Congress defined the term 'applicant' by including the parenthetical language in the statute's first mention of 'applicant' which addressed the issue of corporate entities, and thereafter intended to rely upon the same meaning for the defined term." XVP Sports, LLC v. Bangs, No. 2:11CV379, 2012 WL 4329263, at *8 (E.D. Va., Mar. 21, 2012). Moreover, the XVP Sports construction better fits into the overall statutory and regulatory scheme. When it enacted the GCA, "Congress did not intend merely to restrict interstate sales but sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." Barrett v. United States, 423 U.S. 212, 218 (1976) (emphasis added).

Based on this analysis, MEW's arguments that the ATF lacks the statutory authority to require the disclosure of responsible persons, and that the term responsible persons, as defined by the ATF, excludes all persons not within the meaning of subsection (B) fail. This conclusion is consistent with the Court's earlier opinion in Mountaineer, where it confronted the precise argument raised here. See Mountaineer, 2012 WL 194079, at *7 n.3.

## C. Casanova Guns

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

Assuming that Mrs. Walsh was a responsible person and that failure to disclose responsible persons on the application is a proper basis for denial, it follows that the applicant for Mountaineer violated §§ 923(d)(1)(C), (d)(1)(D), and 27 C.F.R. § 478.47(b)(4) by failing to disclose her. Whether the applicant was Mr. Walsh or the entity itself, however, is a question that must be addressed prior to discussing the principle set forth in Casanova Guns.

As already discussed, the same word used within the same statute is interpreted to have a single meaning. Atlantic Cleaners, 286 U.S. at 433. Thus, the term "applicant," as used in each of the seven subsections of § 923(d)(1), must mean either the corporate entity on whose behalf its agent applies, or the individual who signs the application. It is clear that Congress intended to assign the latter definition to the term "applicant."

First, subsection (A) requires the applicant to be at least twenty-one years old. It is inconceivable that Congress premised the approval of a corporation's FFL application on a corporate existence of twenty-one years. In any event, were that Congress's intent, MEW's application would be properly denied. Second, the parenthetical qualifier in subsection (B) explicitly contemplates

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

"any individual" applying on behalf of the corporation. <u>See</u> <u>Ritchie Grocer Co. v. Aetna Cas. & Sur. Co.</u>, 426 F.2d 499, 500 (8th Cir. 1970) (internal quotation marks and citation omitted) ("A corporation must necessarily act through agents . . . ."). Here, Mr. Walsh was the individual who applied on behalf of Mountaineer and MEW. Therefore, for purposes of § 923(d)(1), he is "the applicant," and assuming <u>arguendo</u> that Mrs. Walsh was a responsible person, he, not Mountaineer, is a willful violator of the GCA.

The question thus is whether Mr. Walsh can ever sever his prior violation of the GCA to once again become eligible for an FFL. It is on this issue that <u>Casanova Guns</u> provides helpful guidance. There, the Seventh Circuit reviewed the district court's decision upholding the ATF's denial of Casanova Guns, Inc.'s ("Casanova Guns") FFL application. <u>See</u> <u>Casanova Guns</u>, 454 F.2d at 1321. The ATF, and later the district court, determined that Casanova Guns was a corporate successor-in-interest to Casanova's, Inc. ("Casanova's"), an entity ineligible for an FFL under § 923(d)(1)(B) due to a prior felony conviction (possession of unregistered firearms). <u>Id.</u> at 1322. The ATF's finding, nearly identical to that of the district court, explained that "investigation has established that the applicant's employer,

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

Casanova Guns, Inc., is a corporate successor in interest directly related to a corporation, Casanova's, Inc., which is a convicted felon." <u>Id.</u>  The ATF also found that Casanova Guns' business operations were "substantially similar" to those of Casanova's, and that officers of Casanova Guns also had been responsible for the operations of Casanova's.  <u>See id.</u>

The Seventh Circuit affirmed the district court on two grounds: (1) Casanova Guns was a successor-in-interest to Casanova's; and (2) the intent behind the formation of Casanova Guns was to circumvent the GCA.  <u>See id.</u> at 1322-23.  With respect to whether Casanova Guns was a successor-in-interest to Casanova's, the circuit court found that the facts overwhelmingly established the unity of interest between the two entities.  For thirty-nine years, Clarence Casanova had been the majority shareholder of Casanova's.  <u>See id.</u> at 1322.  After Casanova's lost its FFL, Clarence's son, John Casanova, formed Casanova Guns as its president and sole shareholder.  <u>See id.</u> Other family members, who were former employees of Casanova's, became officers and directors of Casanova Guns.  <u>See id.</u>  Casanova Guns subsequently purchased the entire inventory of Casanova's and sold the firearms out of the same building, which it leased from Casanova's.  <u>Id.</u>

## MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING THE PETITION WITH PREJUDICE

In determining that the purpose of Casanova Guns was to circumvent the GCA, the Seventh Circuit first laid out the "well settled" legal principle that "the fiction of a corporate entity must be disregarded whenever it has been adopted or used to circumvent the provisions of a statute." Id. It then went on to explain:

> It is apparent from the record that a substantial purpose for the incorporation of Casanova Guns was the circumvention of the statute restricting issuance of firearms licenses to convicted felons. Casanova Guns was formed after Casanova's was under federal indictment. Indeed, the testimony of John Casanova at the administrative hearing is a reluctant admission that the second corporation was formed to insure the continuation of the gun business.

Id. at 1323.

Here, although the facts are not quite as overwhelming in demonstrating the unity of interest between the two companies, they are sufficient to support a finding that MEW is a successor-in-interest to Mountaineer. Mr. Walsh was the sole member and president of Mountaineer, and likewise is the sole member and president of MEW. Mark Anthony Walsh (who apparently is Mr. Walsh's son) was an employee of Mountaineer and, according to the application, intends to manage MEW. Both businesses operate out of the same building premises at 657-59 Point Marion Road, Morgantown,

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

West Virginia, which were and are leased from Mountaineer Country Rentals, LLC, whose members include both Mr. and Mrs. Walsh.

Based on these facts, MEW undoubtedly is a successor-in-interest to Mountaineer. Moreover, the purpose underlying Mr. Walsh's formation of MEW was to circumvent the GCA. He formed MEW just eight days after this Court dismissed Mountaineer's petition. His reason for doing so was self-evident – that he needed a business other than Mountaineer through which to sell his firearms. There simply can be no other purpose behind the decision to form the new company other than to circumvent § 923(d)(1)(C). Accord XVP Sports, 2012 WL 4329263, at *9; Virlow, LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives, No. 1:06CV375, 2008 WL 835828, at *9 (W.D. Mich., Mar. 28, 2008).

MEW contends that Casanova Guns is inapplicable or, alternatively, distinguishable from the case at bar. It reads Casanova Guns to apply only when the denial of an FFL is based on § 923(d)(1)(B), contending it does not apply when, as here, the denial is based on subsections (C) and (D). According to MEW, in Casanova Guns, the Seventh Circuit relied on the parenthetical language of subsection (B) regarding corporations for its holding when it stated that "the express language of the licensing act . .

18

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

. prohibits the issuance of a license to a convicted felon or to a corporation, partnership or association over which a convicted felon exercises or could exercise control." Casanova Guns, 454 F.2d at 1322.

Indeed, the Seventh Circuit did use the parenthetical language as a bridge to impute the liability of the predecessor corporation to the successor corporation. But nothing in its reasoning foreclosed similar use with regard to the other subsections of § 923(d)(1). Moreover, as this Court has already determined, the word "applicant" within the statute is a defined term whose definition includes the parenthetical language of subsection (B).

MEW also takes issue with the legal principle cited by the court in Casanova Guns that "the fiction of a corporate entity must be disregarded whenever it has been adopted or used to circumvent the provisions of a statute." Id. It rebuts that principle by explaining that, in fact, corporate forms are ordinarily observed for purposes of insulating shareholders from personal liability, suing and being sued as a corporate entity, and taxing and regulating.

MEW's argument fails to recognize that such legitimate purposes are pursued by companies in accordance with other laws,

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

while, here, Mr. Walsh formed MEW purposely to avoid a particular law. As one court has noted, "[w]e are hard pressed to believe that Congress would have intended such an easy workaround to such a complex, pervasive regulatory scheme." United States v. King, 735 F.3d 1098, 1105 (9th Cir. 2013).

Finally, MEW argues that, even if Mr. Walsh's liability does attach to MEW, the egregious facts supporting the circuit court's holding in Casanova Guns are not present in this case. Specifically, it points out that Casanova's had been convicted of a felony and adjudged a violator of the GCA. In contrast, no court has ever held that Mr. Walsh violated the GCA; according to MEW, that fact rebuts the presumption that he formed MEW simply to circumvent the statute.

Contrary to MEW's argument, the presence of a court judgment was not determinative in Casanova Guns. MEW speculates that, had Casanova's been deemed ineligible for an FFL by the ATF rather than by court order, Casanova Guns would never have been formed. Such conjecture is not supported by the facts in the case, however. Indeed, it is more reasonable to assume that Clarence and John Casanova would have formed Casanova Guns, and that the Seventh Circuit would have found an attempted circumvention of the GCA,

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

irrespective of the difference between the judgment of a court or agency.

MEW also distinguishes Casanova Guns on the basis that MEW is not yet operational; thus, a court cannot yet determine whether MEW is a strawman entity. That distinction, however, is immaterial. In Virlow, the court had no trouble concluding that the purpose behind the successor company was to circumvent the GCA, even though it was not operational at the time of the decision. Virlow, 2008 WL 835828, at *9. Similarly, in XVP Sports, the court found that the formation of the successor company was a "transparent attempt to circumvent the provisions of a statute," despite XVP's inability to sell guns without a license. XVP Sports, 2012 WL 4329263, at *9. In cases such as the one at bar, the successor company will necessarily be non-operational at the time of the court's decision. Casanova Guns was an aberration only because the successor company was formed after indictment but before the conviction on which the ATF's subsequent denial was based. In any event, MEW's argument has no bearing on the conclusion that Mr. Walsh formed it to circumvent the GCA.

**D. The Preclusive Effect of the ATF's First Revocation**

### MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING THE PETITION WITH PREJUDICE

Before reviewing the record under the summary judgment standard, there is one more issue to address: Does the ATF's decision in Mountaineer preclude the relitigation of Mrs. Walsh's status as a responsible person? Because this question focuses on the preclusive effect of an agency decision rather than a court decision, the traditional elements of collateral estoppel are supplanted by the fairness requirements of United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966). Under Utah Construction, administrative estoppel applies "[w]hen an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." Id.; see also Hall v. Marion Sch. Dist. No. 2, 31 F.3d 183, 191 (4th Cir. 1994) (dividing the test into three elements).

Here, the ATF appears to have satisfied the Utah Construction test. First, administrative estoppel applies even though the ATF's revocation of Mountaineer's FFL was quasi-judicial in nature. See F.T.C. v. Texaco, Inc., 555 F.2d 862, 930 (D.C. Cir. 1977) (interpreting the "judicial capacity" requirement to include quasi-judicial actions); see also 73 C.J.S. Judicial or Quasi-Judicial Character § 16 (2013) (explaining the difference). Second, the ATF

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

made factual findings regarding issues properly before it.  See 27
C.F.R. § 478.73.  Third, even though Mountaineer failed to do so,
it had the opportunity to fully litigate the ATF's factual findings
at an administrative hearing.  See 18 U.S.C. § 923(f)(2); see also
Kremer v. Chem. Constr. Corp., 456 U.S. 461, 485 (1982) (holding
that a party's failure to avail itself of statutory remedial
procedures does not render inadequate the party's opportunity to
litigate); Herrera v. Churchill McGee, LLC, 680 F.3d 539, 549 (6th
Cir. 2012) (rejecting the proposition that an actual hearing is a
prerequisite to administrative preclusion).

     Based on its findings and Mountaineer's withdrawal of its
request for a hearing, the ATF issued a Final Notice of Revocation.
Notably, it could have subsequently invoked that revocation as a
basis for denying MEW's FFL application.  But Johansen never raised
the issue of administrative estoppel, either prior to the
administrative hearing, or as an affirmative defense in his answer
to the complaint, or in his dispositive motion, or in his response
to MEW's dispositive motion.  In fact, Johansen never raised
administrative estoppel until almost a year after the
administrative hearing and nearly eight months after the complaint
was filed.  He first argued it in his reply brief filed on

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

September 3, 2013, in which he devoted only ten lines of his argument to the defense.

Although MEW had an opportunity to respond through supplemental briefing, Johansen's delayed reliance on the defense is surprising. Moreover, MEW and Mr. Walsh have incurred significant costs and spent an extraordinary amount of time litigating the case up to this point. Therefore, disposing of it now on late-filed grounds of administrative estoppel would work a serious injustice. Therefore, the Court finds that Johansen has waived the affirmative defense of administrative estoppel. See Arizona v. California, 530 U.S. 392, 410 (2000) (disapproving of a party raising a preclusion defense well after its first opportunity to do so); Georgia Pac. Consumer Prods., LP v. Von Drehle Corp., 710 F.3d 527, 533 (4th Cir. 2013) (holding that a party may waive a preclusion defense by "waiting too long to assert [it]"); Peterson v. Air Line Pilots Ass'n, Int'l, 759 F.2d 1161, 1164 (4th Cir. 1985) (holding that the defendant waived its affirmative defense based on fairness considerations); see also Davignon v. Clemmey, 322 F.3d 1, 15 (1st Cir. 2003) (finding an abuse of discretion where the district court permitted the defendant to raise a preclusion defense "at the eleventh hour"); Kane v.

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

Heckler, 776 F.2d 1130, 1132 (3d Cir. 1985) ("[W]here the administrative process . . . reviews the entire record in the new proceeding and reaches a decision on the merits, the agency has effectively reopened the prior claims and waived application of res judicata.").

**E. Summary Judgment**

The Court now turns to the administrative record to determine if any genuine factual dispute exists as to whether Mrs. Walsh was a responsible person at Mountaineer. Under 18 U.S.C. § 923(f)(3), review of the ATF's denial or revocation of an FFL is de novo. In its review, the court "may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the [administrative] hearing . . . ." § 923(f)(3). In light of such additional evidence, as well as the administrative record, it may accord the agency's findings and conclusions as much or as little deference as it deems appropriate. XVP Sports, 2012 WL 4329263, at *4. Furthermore, on petition for review, the narrow issue is whether the ATF was authorized to deny or revoke the FFL based on a single violation of the GCA. See § 923(f)(3); see also American Arms Int'l v. Herbert, 563 F.3d 78, 86 (4th Cir. 2009).

## MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
## MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
## MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
## THE PETITION WITH PREJUDICE

The <u>de novo</u> standard prescribed by § 923(f)(3) does not vitiate the standard otherwise applicable to motions for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(1)(A), (a).  When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. <u>Providence Square Assocs., L.L.C. v. G.D.F., Inc.</u>, 211 F.3d 846, 850 (4th Cir. 2000).  It must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

Here, Johansen, the moving party, bears the initial burden of informing the Court of the basis for the motion and of establishing the non-existence of genuine issues of fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once he has made the necessary showing, MEW "must set forth specific facts showing that there is

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. <u>Id.</u> at 248-52.

On petition for review of an agency action, "an administrative record is a duly authenticated record that enjoys a presumption of verity." <u>American Arms Int'l</u>, 563 F.3d at 86 n.12 (citing <u>Langston v. Johnson</u>, 478 F.2d 915, 917-18 (D.C. Cir. 1973)). Thus, an agency relying on the administrative record has satisfied its initial burden of demonstrating the lack of a material factual dispute. <u>Id.</u> Johansen therefore has met his initial burden on summary judgment.[3]

If Mrs. Walsh was a responsible person, as alleged by Johansen and the ATF, then Mr. Walsh clearly violated the GCA by failing to

---

[3] MEW argues that Johansen's motion does not meet the requirements of Fed. R. Civ. P. 56(c)(1) because it does not cite to particular facts. However, in his six pages of facts, Johansen is clearly referring to the administrative record. He acknowledges this in footnote 2 and, on the same page, cites to hearing exhibits 1,2, and 4. Moreover, as explained above, in an appeal of agency action, district courts are permitted to base summary judgment on the administrative record. <u>American Arms Int'l</u>, 563 F.3d at 86 n.12 (citing <u>Langston v. Johnson</u>, 478 F.2d 915, 917-18 (D.C. Cir. 1973)).

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

list her on the Mountaineer application. Viewed in such light, his application for MEW was properly denied by the ATF.  Therefore, this case turns entirely on whether Mrs. Walsh was a responsible person.   In determining that she was a responsible person, the ATF relied on ten findings in its Final Notice of Revocation to Mountaineer.  They include:

<u>First</u>, that Mrs. Walsh's FFL was revoked when she sold firearms out of TGS Sporting Goods. This fact is undisputed. The record includes the ATF's Final Notice of Revocation sent to TGS on January 23, 2006, with an effective revocation date of February 10, 2006.  (Dkt. No. 15-8 at 7).

<u>Second</u>, that Mrs. Walsh had urged Mr. Walsh to apply for an FFL on behalf of Mountaineer, and that 91% of Mountaineer's inventory consisted of former TGS inventory. The agency further found that Mr. Walsh lied to Inspector Malaskovitz regarding his knowledge of his wife's prior revocation.  Although Mr. Walsh testified that he had the idea "to get things going" with Mountaineer (dkt. no. 15-5 at 9), he never refuted the ATF's finding that his wife urged him to apply for Mountaineer's FFL. Regarding the inventory, Mr. Walsh openly admitted that "379 firearms [] were transferred to Mountaineer from TGS." (Dkt. Nos.

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

11-7 at 2, 15-5 at 12, 11-4). There is, however, contradictory evidence in the record regarding the ATF's assertion that Mr. Walsh lied to Inspector Malaskovitz; Mr. Walsh testified he did not recall making a false statement.  (Dkt. No. 15-5 at 34-35).

Third, that Mr. Walsh exaggerated his involvement in the sale of firearms during the inspection, as evidenced by his full time job with a different company and the firearm sale/transfer forms, none of which include his name.  When asked during the hearing whether he completed the forms, Mr. Walsh admitted that he did not; rather, his wife did.  (Dkt. No. 15-5 at 11, 21).  He further admitted that, because of his full-time job, he was not present at Mountaineer during the weekdays between 9:00 a.m. and 4:00 p.m., and he conceded that gun sales took place while he was not there. (Dkt. No. 15-5 at 15, 22-23).  Even though Mr. Walsh stated that he sold the firearms during evenings and weekends, when, he contended, most of the sales took place, he acknowledged that Mrs. Walsh had sold firearms on at least "one or two occasions."  (Dkt. No. 15-5 at 23).

Fourth, that Mr. Walsh admitted that his wife ran the firearms business. Although there is no such express admission, Mr. Walsh nevertheless admitted that Mrs. Walsh placed the orders for

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

inventory with wholesalers, helped tag and log the firearms, showed guns to customers, called in sales to the FBI, filled out the firearm transaction forms, and completed the acquisition and disposition recordbook. (Dkt. No. 15-5 at 11-12, 20-22).

Fifth, that Mr. Walsh intentionally omitted his wife's name from Mountaineer's FFL application. MEW does not dispute this. When asked why his wife's name did not appear on the application, Mr. Walsh responded "for the fact that she wasn't able to be involved in sales of guns." (Dkt. No. 15-5 at 10). Whether or not this was done surreptitiously, as the ATF suggests, can only be determined based on the other facts of the case.

Sixth, that Mrs. Walsh ran the firearms business. As already noted in the ATF's fourth finding, although Mr. Walsh denies that his wife ran the firearms business, he has admitted that she performed most of the functions necessary for its operation.

Seventh, that Peggy White ("Ms. White"), a Mountaineer employee, told Inspector Malaskovitz that he should speak to Mrs. Walsh regarding firearms because Mrs. Walsh was the "owner."[4] MEW has not denied that Ms. White made this statement; in fact, Mr.

---

[4] Under the Federal Rules of Evidence, this statement is not hearsay. See F.R.E. 801(d)(2)(D).

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

Walsh stated he was not surprised to hear Ms. White had done so. (Dkt. No. 15-5 at 40).

Eighth, that Ms. White was not the manager of the firearms business, as Mrs. Walsh had identified her to Inspector Malaskovitz. It is undisputed that "Peggy White was not the gun manager." (Dkt. 11-2 at 2).

Ninth, that Mrs. Walsh could hire employees, had signing authority on Mountaineer's checking account, and signed employee paychecks. MEW admitted that "both Mark Walsh and Teresa Walsh had signing authority for employee paychecks." (Dkt. No. 11-2 at 2). However, Mr. Walsh contests the ATF's assertion that his wife could hire employees. (Dkt. No. 15-5 at 18-19). Nevertheless, he has admitted that his wife acted as the human resources department of the business, because she "does the payroll and deal[s] with the custom -- or the employees." (Dkt. No. 15-5 at 36).

Tenth, that Sherri Flint ("Ms. Flint"), a Mountaineer employee, lied to Inspector Malaskovitz about Mrs. Walsh's role in the gun business when she told him that Mrs. Walsh had nothing to do with it. MEW has not denied that Ms. Flint made such a statement to Inspector Malaskovitz. Moreover, it has admitted that Mrs. Walsh was quite involved in the gun business, even though she

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S**
**MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S**
**MOTION FOR SUMMARY JUDGMENT, AND DISMISSING**
**THE PETITION WITH PREJUDICE**

did not hold the title of gun manager. Therefore, the ATF correctly found that Ms. Flint's statement was false.

In sum, the ATF based its denial of MEW's application on the following undisputed facts: (1) Mrs. Walsh's FFL was revoked when she was operating TGS Sporting Goods; (2) Mr. Walsh knew about the revocation and, at his wife's urging, opened Mountaineer, applied for an FFL while intentionally omitting her name, and purchased the majority of Mountaineer's firearm inventory from her; (3) Upon inspection of Mountaineer, Ms. White, who was not the gun manager, told Inspector Malaskovitz to speak to Mrs. Walsh regarding the firearms and referred to Mrs. Walsh as the "owner"; (4) Ms. Flint, a Mountaineer employee, lied to Inspector Malaskovitz when she told him that Mrs. Walsh had nothing to do with the firearms business; (5) Mr. Walsh exaggerated his role in the firearms business during the inspection. In fact, he worked a full time job and was not in the store between 9:00 a.m. and 4:00 p.m. on weekdays; (6) Mrs. Walsh completed almost all the firearm sales forms due to her husband's absence during the workweek; (7) Even though Mr. Walsh explained that most firearm sales took place during the hours when he was in the store, he acknowledged that other employees, including his wife, sold firearms on occasion; and (8) Mr. Walsh

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

admitted that his wife placed the orders for inventory with wholesalers, helped tag and log the firearms, showed guns to customers, called in sales to the FBI, filled out the firearm transaction forms, completed the acquisition and disposition recordbook, had authority to draw on the business's checking account, including drafting payroll checks, and acted as the human resources department.

These undisputed facts are sufficient to establish that Mrs. Walsh was a responsible person at Mountaineer. By definition, a responsible person is "any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices" of the firearms business. Although it is uncertain whether Mrs. Walsh actually handed the guns to customers upon sale, she admittedly performed almost every other function of the business. Although Mr. Walsh argues that he maintained the final word on many of the company's major decisions, that does not diminish the role played by his wife, who performed the essential duties of the business without her husband between 9:00 a.m. and 4:00 p.m. five days per week.

**III. CONCLUSION**

**MEMORANDUM OPINION AND ORDER GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING
THE PETITION WITH PREJUDICE**

Because Mrs. Walsh performed key functions for much of the week, and because the other Mountaineer employees viewed her as the manager, she clearly had the power to direct the policies and practices of Mountaineer's firearm business and thus was a responsible person.  Mr. Walsh admitted that he intentionally omitted her name from the FFL application because of her prior revocation.  By so doing, he became a willful violator of the GCA under 18 U.S.C. §§ 923(d)(1)(C) and (d)(1)(D).  Therefore, when he applied for an FFL on behalf of MEW, the ATF properly denied his application pursuant to 27 C.F.R. § 478.47(b)(4).

For these reasons, the Court **GRANTS** Johansen's motion for summary judgment, **DENIES** MEW's motion for summary judgment, and **DISMISSES** the petition **WITH PREJUDICE.**

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: January 21, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE